## KARKER vs. HAVERLY.

Where a vendor is unable to perform his agreement to convey the premises *free from all incumbrances,* for the reason that they are incumbered by mortgage, the purchaser is excused from offering to execute and deliver a bond and mortgage for the purchase money.

A tender of performance need not be made when it would be wholly nugatory; and the existence of an incumbrance at the time fixed in the agreement for the execution of a deed, is a breach of the vendor's covenant which puts it out of his power to perform, and excuses the purchaser from tendering performance.

By a written agreement between the parties, the defendant rented a farm to the plaintiff for one year, and agreed to sell and convey the farm to him, at the expiration of the term, by warranty deed free from all incumbrances, for $6600, of which sum $1600 was to be paid on the delivery of the deed, and the balance to be secured by the plaintiff's bond and mortgage upon the premises. On the day appointed, the defendant had a deed prepared, executed and acknowledged, ready for delivery, which he offered to the plaintiff, but it was refused, for the reason that there was a mortgage upon the premises, which was not canceled and discharged and was unpaid. The plaintiff tendered the $1600. *Held* that the defendant, being unable to give a title free and clear of all incumbrances, and thus not in a condition to perform, on his part, it was not essential to the plaintiff's right to maintain an action for damages that he should tender, or offer to execute and deliver, the bond and mortgage.

And it appearing that the vendor was, to the knowledge of the purchaser, at the place appointed, with the holder of the prior mortgage, ready to cancel such mortgage as soon as the payment was made by the purchaser, and remained there until quite late in the day, when the mortgagee left, for home, after which the money was tendered; and that the vendor offered to send for the mortgagee and get a satisfaction as soon as a messenger could go to his house and return; but the purchaser replied that he could not wait, or would not wait; *Held* that this amounted to a direct waiver by the purchaser of any further effort by the vendor to obtain the satisfaction piece, which precluded the former from insisting, afterwards, that the latter had failed to perform.

A PPEAL from a judgment in favor of the defendant, entered on a trial at the Schoharie circuit, in May, 1863, before Justice PECKHAM, without a jury. The question in the case is whether the plaintiff is precluded from recovering liquidated damages in a contract to convey real estate.

On the 1st day of December, 1860, the parties entered

into a written contract whereby the defendant rented a farm in Middleburgh to the plaintiff, for one year, from April 1, 1861, at a rent of $500, and agreed on the 1st day of April, 1862, to sell and convey the farm to the plaintiff by warranty deed free from all incumbrances, for $6600, payable, $1600 April 1, 1862, on delivery of the deed, at the office of Brewster & Davis, in Schoharie, and the balance, $5000, to be secured by the defendant's bond and a mortgage upon said premises in annual installments of $500, and interest upon the whole sum unpaid. The damages for non-performance were liquidated at $600. On two occasions before April 1, 1862, the last only a few days before, the plaintiff saw the defendant's brother-in-law, Smith Youngs, and requested his aid in raising the $1600, which was refused. He asked to be released from the contract, which was also refused, when he told Youngs he would perform it. On the 1st of April, just before going to the office of Brewster & Davis, he saw the defendant himself, and asked to be allowed to hire the farm for another year. The defendant had heard that the plaintiff did not mean to take the place ; had a deed subsequently executed, to be tendered to the plaintiff that night, so as to sue him for the $600 liquidated damages if he did not perform.

On the 1st of April, 1862, one Paul Haverly, Jr. held and still holds, a mortgage on the premises for $2800 given April 1, 1858. The defendant and wife had that day executed a warranty deed to the plaintiff of the premises, proper in form. About four or five o'clock in the afternoon of that day the plaintiff went to the office of Brewster & Davis and there tendered to the defendant $1600 in gold ; stated he was ready, and offered to pay it to the defendant on receiving a deed of the premises, free from incumbrances. *The defendant requested no time to prepare a proper deed,* but tendered that already drawn, which was refused, on account of the $2800 incumbrance. The plaintiff did not *tender* nor offer to *execute* or *deliver* any bond or mortgage for the balance

Karker *v.* Haverly.

of $5000. The defendant procured Paul Haverly, Jr. the owner of the mortgage, to attend and be present at the time and place fixed for the exchange of the papers, with his mortgage, ready to cancel and satisfy the same in case the plaintiff should perform his agreement, and the plaintiff had notice that the said mortgagee was present for the purpose aforesaid. He remained until late in the afternoon and went home, about thirteen miles distance, shortly before the tender was made. According to the evidence of one of the witnesses the plaintiff's attorney was told that he had been there during the day and had now gone home, and if the plaintiff was ready and willing to perform, the defendant would go to his house and get a satisfaction as soon as he could and return, which would be about 12 o'clock. The reply, in substance, was that he could not wait, or would not wait.

The judge dismissed the complaint mainly upon the ground that the plaintiff did not tender and offer to execute the bond and mortgage as stipulated in the agreement. Judgment being entered, the plaintiff appealed.

*N. C. Moak,* for the appellant.

*R. Brewster,* for the respondent.

*By the Court,* MILLER, J. By the agrreement between the parties the plaintiff was to pay $1600 in cash, and upon the delivery of the deed to secure the residue of the purchase money by bond and mortgage. Upon the money being paid, the defendant was to execute a warranty deed conveying the premises free and clear of all incumbrances. The plaintiff, on the day fixed for the consummation of the contract, tendered the money and demanded a deed, but did not tender nor offer to execute a bond and mortgage for the balance remaining unpaid according to the agreement. The defend-

ant had a deed prepared, executed and acknowledged, which was ready for delivery, and offered it to the plaintiff; but it was rejected for the reason that there was a mortgage upon the premises, which was not canceled and discharged of record, and was unpaid, which prevented the conveyance of a title free and clear of all incumbrances. The mortgagee named in the mortgage had been present most of the day for the purpose of canceling the mortgage, in case the plaintiff should perform and pay the money as agreed upon (of which the plaintiff was duly notified,) but had left a short time previous to the plaintiff's making the tender; it being supposed that the plaintiff would not perform the contract. Upon the tender being made, the defendant offered to get the mortgage satisfied by 12 o'clock that night, which offer was declined by the plaintiff.

To maintain this action, under the circumstances presented by the evidence, which establishes that the defendant was not in a condition to perform and was unable to give a title free and clear of all incumbrances, I think it was not essential that the plaintiff should tender or offer to execute and deliver a bond and mortgage.

The authorities are somewhat conflicting upon the point presented, and it may be remarked that it has been, perhaps, a question not entirely free from difficulty, until recently. That a tender was necessary by the party claiming the deed, of a bond and mortgage, when the contract required its execution and delivery, would seem to be upheld by several adjudications which are entitled to great weight, and if standing alone might be considered as conclusive authority.

In *Johnson* v. *Wygant*, (11 *Wend.* 48,) it was decided that in an action on a contract for the sale of lands by a vendor to a vendee, by which the latter covenants to pay the former a sum certain, in three annual installments, upon the payment whereof he is to receive a deed of land, the plaintiff, if he waits to bring his suit until all the installments have fallen due, must aver in his delaration an *actual tender of a*

Karker *v.* Haverly.

*deed, or offer to execute the same.* So, also, in *Dakin* v. *Williams,* (11 *Wend.* 68,) which was an action to recover liquidated damages, a similar principle is laid down. That case arose upon demurrer to the plaintiff's complaint, in which the plaintiff did not aver payment of the sum named in, and required by, the contract, and assigned as a breach that the defendants assisted and aided in the publication of a newspaper, in violation of the contract. The court held that where there is a condition precedent on the part of the plaintiff, performance, or what is equivalent thereto, must be averred and proved.

In *Williams* v. *Healey,* (3 *Denio,* 363,) which was also an action to recover liquidated damages, and arose upon demurrer to the complaint, and where a bond and mortgage was to be given, the court held that the plaintiff should have averred that he was ready and willing to execute the bond and mortgage, showing thereby a performance of every thing which it was in his power to perform, and an excuse for nonperformance of the residue. This case decides quite distinctly, I think, that when the plaintiff was bound to execute a bond and mortgage, he should have shown a readiness to do so.

If these cases stood alone they would, I think, be decisive of the question ; and were this an original question I should be strongly inclined to hold that where a party comes into court and seeks to exact from his adversary by mere force of a contract strictly construed under the most technical rules of law, as in this case, and in the nature of a mere penalty, a sum of money without regard to equitable rights, he should be required to conform in every respect to the very letter of his agreement. He should fulfill in all particulars, on his part, and have the same measure dealt out to him as he demands from the defendant. While he asks the aid of the court to compel the payment of a large sum of money because it is nominated in the bond, he should be exactly up to the very line of its requirements, in every single particular. He

should in no way deviate from the conditions imposed, or be allowed to exonerate himself from all which it demands. Just and equitable as such a rule would be, I am inclined to think that the weight of authority, especially in recent decisions, is against it. And to say nothing of several cases which appear to sustain a different doctrine, (*Clark* v. *Crandall,* 3 *Barb.* 614, 615 ; *Holmes* v. *Holmes,* 12 *id.* 137, *affirmed* 9 *N. Y. Rep.* 525 ; *Burwell* v. *Jackson,* 9 *id.* 547 ; *Lawrence* v. *Taylor,* 5 *Hill,* 108 ; *Crist* v. *Armour,* 34 *Barb.* 386, 388,) some of which, perhaps, may be questioned and liable to crititism, the case of *Morange* v. *Morris,* (32 *How. Pr.* 178,) is directly in point, and is adverse to the doctrine which holds that a bond and mortgage should be tendered, where it is required to be executed, when the other party is in default. In that case the action was brought to recover money paid by the vendee. The plaintiff was to pay a certain sum in cash, and assumed certain mortgages, and agreed to execute his bond and mortgage for the balance, on a certain day. And upon the defendant receiving such payments and the bond and mortgage, on that day, he was to convey certain lots in fee *free from all incumbrances* except said mortgages and a lease. Upon the trial the plaintiff's counsel moved for judgment on the pleadings, on the ground that it was averred in the complaint, and admitted by the answer, that the lots were incumbered with liens for taxes and assessments imposed, and therefore the defendant was unable to convey to the plaintiff in fee as required by the agreement. The court directed a verdict in favor of the plaintiff, for the amount claimed in the complaint, less the amount of a counter-claim set up in the answer. It was held that where the defendant was unable to perform his agreement, for the reason that the premises were incumbered with liens for taxes and assessments admitted in the answer, the plaintiff was excused from tendering payment and offering to perform on his part, on the day specified. It was also decided that a tender of performance need not be made when it would be

Karker *v.* Haverly.

wholly nugatory, and that the existence of the incumbrances at the time fixed in the agreement for the execution of the deed was a breach of the agreement on the part of the defendant which put it out of his power to perform, and excused the plaintiff from tendering performance. This adjudication from the highest tribunal in the state must be considered decisive and controlling, and I think disposes of the question which I have discussed.

Although the point I have already considered is not well taken, there is, I think, an insuperable difficulty in the way of a recovery by the plaintiff in this action. It appears that the defendant was at the place appointed, with the mortgagee, to cancel the mortgage as soon as the payment was made, and the mortgagee remained there until quite late in the day, for that purpose. The plaintiff had notice that the mortgagee was there, and after he had left, the money was tendered. The defendant offered to send for the mortgagee and get a satisfaction, as soon as he could get to his house and return, by twelve o'clock that night. The reply was, as stated by one of the witnesses, that he could not, or would not, wait. Now the defendant had the whole of the day, in which to perform the contract; and if he was able at any time during the day to do so, he would not be in default. He expressed a readiness and willingness to do so, provided the plaintiff would consent to a little delay. The plaintiff refused to give him any opportunity for that purpose. He said to him, virtually and substantially, you need not send and obtain the satisfaction piece of the mortgagee, as I will not offer you the money again. I will relieve you from that burden. Here was a direct waiver on the part of the plaintiff of any further effort of the defendant to obtain the satisfaction piece, which I think precludes the plaintiff from insisting, now, that the defendant failed to perform.

If the defendant, after the plaintiff had tendered the money, had obtained the cancellation of the mortgage and tendered the deed and demanded the money, can there be a doubt but

that he would have fulfilled ?   The plaintiff releases him from this, by saying to him, it is useless to be at any such trouble, as I cannot wait, and shall not again bring you the money.   I think the defendant was thereby discharged from obtaining a satisfaction of the mortgage.   At least, under the circumstances of this case, the plaintiff should have called a second time, for the deed, after having given the defendant a reasonable opportunity to procure a satisfaction of the mortgage.   This he failed to do, and by his own conduct has precluded himself from a recovery.   He certainly has no right to complain.

I am gratified to be able to arrive at the result I have above indicated, because it is quite apparent that substantial justice will be thereby promoted.   The action is for a stipulated sum, and before a recovery should be had the party must make out a strictly legal cause of action ; while the defendant is only entitled to strict justice, for he was exacting and rigid in his demands.   The plaintiff has no claim for sympathy, in enforcing his claim, when the circumstances all tend to show that up to the very day when the papers were to be executed, and almost to the very time when he made the tender, he was either apparently unprepared to fullfil the contract, or attempting to convey such an impression to the mind of the defendant, with a·view of obtaining an advantage.   But whether he acted in good faith or otherwise, it is obvious in this case as in most others, that the right application of a sound legal principle promotes justice and prevents a recovery which would bear severely and heavily upon the interests of the defendant.

It follows from these views that the judge was right in dismissing the complaint, and the judgment must be affirmed, with costs.

[ALBANY GENERAL TERM, March 4, 1867. *Peckham, Miller* and *Hogeboom,* Justices.]